UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| ROBIN RICHARDSON,<br><br>         Plaintiff,<br><br>    vs.<br><br>MYW HOLDINGS, LLC, et al.,<br><br>         Defendants. | Case No.: 3:15-CV-00365-RCJ-WGC<br><br>**ORDER** |

This case arises out of a stock purchase agreement to acquire Silicon Quest International, Inc. for $1,880,000 cash and a promissory note worth $1,815,600. Plaintiff Robin Richardson alleges Defendants breached the contract and an implied covenant of good faith and fair dealing by defaulting on payment of the note. Pending before the Court are Defendants' Motions to Dismiss for Improper Venue and Forum Non Conveniens or, alternatively, a Motion for a Stay of Proceedings (ECF No. 7). For the reasons given herein, the Court dismisses the case as a Motion to Compel Arbitration.

I.   **FACTS AND PROCEDURAL HISTORY**

Defendant MYW Holdings, LLC ("MYW") is a California company, of which Defendant Siu Man Ng AKA "Johnny" Ng ("Ng") is a managing member. Ng used MYW to purchase Silicon Quest International, Inc. (SQI) from Plaintiff Robin Richardson. MYW and Richardson entered a stock purchase and sale agreement ("SPA") under which MYW would pay $1,880,000

cash at closing and a promissory note worth $1,815,600, including interest. (SPA, ECF No. 7-10, at 4–6). Defendants Ng, Powergate Semiconductors Company, Ltd, and Handle Electronics Company, Ltd allegedly agreed to guarantee MYW's purchase of SQI. The SPA contains the following clause with no heading:

> breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in the County of Santa Clara in California, before one arbitrator. The arbitration shall be administered by JAMS and in English. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. Each party will bear its own costs for arbitration, including attorney's fees. The provisions of this paragraph shall survive any termination of this Agreement.

(*Id.* at 22).

After the purchase, SQI entered new employment contracts with Michael Lyu and Jack Snyder, officers at SQI. In December 2014 and January 2015, Lyu and Snyder brought two separate actions against SQI and Ng in the Superior Court of California in and for the County of Santa Clara, seeking enforcement of the contracts (Lyu Compl., ECF No. 7-2 at 2; Snyder Compl., ECF No. 7-2 at 17).[1] On May 1, 2015, Ng, SQI, and MYW filed a cross complaint against Lyu, Snyder, and Michael Richardson alleging, inter alia, breach of contract, fraudulent inducement to contract, and fraud. (Cross-Compl., ECF No. 7-1). They also filed an Ex Parte Application of Temporary Restraining Order seeking to prevent Lyu, Snyder, Mr. Richardson, or Plaintiff from taking action to enforce the SPA and related agreements. (TRO, ECF No. 7-6). On May 26, 2015, the California court denied the TRO request. (Order After Hearing, ECF No. 7-9).

Earlier, on April 28, 2015, Plaintiff filed this suit in the Second Judicial District Court of the State of Nevada, alleging that Defendants defaulted on the promissory note. (Compl., ECF

---

[1] The California court consolidated Lyu's and Snyder's actions into one case. (Order on Mot. to Consolidate, ECF No. 7-4).

No. 1-1). She claims breach of contract and breach of the covenant of good faith and fair dealing. (*Id.*). On July 13, 2015, Defendants removed Plaintiff's state suit to the U.S. District Court, District of Nevada. (Notice of Removal, ECF No. 1). Defendants now move to dismiss for improper venue and forum non conveniens, or, alternatively, to stay the proceedings.

## II.  LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are enforced under Sections 3 and 4 of the FAA, which provide "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983). Section 3 gives courts the power to provide "a stay of litigation in any case raising a dispute referable to arbitration," while Section 4 empowers courts to provide "an affirmative order to engage in arbitration." *Id.*; 9 U.S.C. §§ 3–4.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24; *see Perry v. Thomas,* 482 U.S. 483, 489, (1987) (stating that the FAA "embodies a clear federal policy requiring arbitration" when there is a written arbitration agreement relating to interstate commerce).

Despite this strong federal policy in favor of arbitration, arbitration is a "matter of contract," and no party may be required to submit to arbitration "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 79 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). If "the making of the arbitration agreement . . . [is] in issue," then the district court shall proceed to trial

on the issue.[2] 9 U.S.C. § 4; *see also Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). However, "[a] naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement.'" *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980). To warrant a trial, a party's "unequivocal denial that the agreement has been made, accompanied by supporting affidavits . . . in most cases should be sufficient." *Id.* at 54–55 (ordering a jury trial when a party used a sworn affidavit to support its contention that a production manager had no authority to execute a contract containing an alleged arbitration clause); *see also Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1002 (6th Cir. 2009) (finding that unlike in *Par-Knit Mills*, no material fact as to the validity of the agreement was in dispute). A court's discretion for compelling arbitration is limited to a two-step process of "determining (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). A party cannot be ordered to arbitrate unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC,* 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Par–Knit Mills*, 636 F.2d at 54).

When determining whether a valid agreement to arbitrate exists between the parties, "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.,* 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Instead, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Under Nevada law, an enforceable contract "requires a manifestation of mutual assent in the form of an offer by one party and acceptance thereof by the other ... [and] agreement or meeting of the minds of the parties as to all essential elements."

---

[2] The alleged defaulting party can demand a jury trial if it wishes. 9 U.S.C. § 4.

*Keddie v. Beneficial Ins., Inc.* 94 Nev. 418, 580 P.2d 955, 956 (1978) (Baltjer, C.J., concurring) (citations omitted)). Further, "[i]n interpreting a contract, we construe a contract that is clear on its face from the written language, and it should be enforced as written. A contract is ambiguous only when it is subject to more than one reasonable interpretation." *State ex rel. Masto v. Second Judicial Dist. Court ex rel. Cnty. of Washoe*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009) (citations omitted).

### III.   ANALYSIS

Defendants argue the SPA contains a forum selection clause, which makes venue improper. Plaintiff argues the clause is not a forum selection clause but is possibly a valid arbitration clause. The Court finds the clause to be a valid arbitration clause.

To begin, the clause at issue is an arbitration clause, not a forum selection clause. A forum selection clause designates a specific court jurisdiction in which disputes must be litigated, *see, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 575 (2013) (examining a clause requiring litigation in either "'the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division'") (citations omitted); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991) (examining a clause requiring litigation "in and before a Court located in the State of Florida") (citations omitted), whereas an arbitration clause intentionally removes disputes from the jurisdiction of any court, *see, e.g.*, *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1322 (9th Cir. 2015) (examining a contractual clause requiring "final and binding arbitration and not by way of court or jury trial"). While for some purposes a court might describe an arbitration agreement as "a specialized kind of forum-selection clause," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the

procedure to be used in resolving the dispute"); *see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010) (stating that "[t]he requirement of arbitration at the defendant's site is effectively a forum selection clause" that "designat[es] . . . the forum for arbitration"), such a description does not shift the applicable law from the FAA to an analysis of improper venue or forum non conveniens.[3]

The clause at issue here "is a garden variety arbitration clause." (Pl.'s Resp. to Mot. to Dismiss, 7, ECF No. 13). As evidence, the clause in the SPA uses the phrase "agreement to arbitrate" and requires "binding arbitration in the County of Santa Clara in California, before one arbitrator." (SPA, 22). This language clearly refers to arbitration, not to the selection of a specific forum for litigation within a court's jurisdiction. Because the clause is an arbitration clause, a more appropriate, and common, method for dismissal is a motion to compel arbitration. *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (considering a motion to compel arbitration based on a contractual clause requiring binding arbitration in Boston, MA). Thus, rather than require Defendants to file a separate motion, the Court converts this motion into a motion to compel arbitration. *See Gyptec Iberica v. Alstom Power Inc.*, No. 10-CV-0128, 2010 WL 3951466, at *1 (N.D. Ill. Oct. 5, 2010).

The Court must determine whether the arbitration clause is valid. The Court need not submit this issue to trial because the making of the arbitration agreement is not in issue. Plaintiff does not make even a "naked assertion . . . that [she] did not intend to be bound by the terms thereof." *Par-Knit Mills, Inc.*, 636 F.2d at 55. Plaintiff admits the clause is an arbitration clause and merely argues that textually the clause is not valid.[4] She calls the clause "a mangled

---

[3] Although in *Scherk* the Court referred to arbitration agreements as a type of forum selection clause, its analysis of the clause's validity was based on the FAA. 417 U.S. at 510–520.
[4] Plaintiff argues "it is impossible to determine whether the contract even has a valid arbitration clause." (Pl.'s Resp. to Mot. to Dismiss, 6, ECF No. 13).

alternative dispute resolution clause" and argues it is subject to more than one interpretation, (Pl.'s Resp. to Mot. to Dismiss, 6, ECF No. 13), but she concedes that "[t]he clause at issue here provides, at most, for 'binding arbitration in the County of Santa Clara.'" (*Id.* at 8). Plaintiff does not unequivocally deny the arbitration agreement has been made. Thus, unlike the clause at issue in *Par-Knit Mills*, no material fact regarding the parties' intent to bind themselves to the clause is in dispute here. Because the making of the agreement is not in issue, the Court proceeds to determine whether the arbitration clause is valid.

The primary issue in evaluating the arbitration clause's validity is that it appears to be incomplete. Page 20 of the SPA ends with Section 15.4 and Page 21 begins with the alleged arbitration clause, which has no heading or section number and does not begin with an upper-case letter. (SPA, 21–22). The clause following the arbitration clause skips to Section 15.6. (*Id.*). Defendants seek to prove the arbitration clause is valid by referring to a previous version of the contract, which purportedly contained the entire clause. (*See* Defs.' Mot. to Dismiss, 20–21, ECF No. 7-12). However, Section 15.6 contains an integration clause stating that "[t]his Agreement constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior or contemporaneous letters of intent, agreements, representations, and understandings." (SPA, 21). Thus, the Court limits its review to the clause as written in the signed contract.

As written, the clause is a valid arbitration clause. The clause states that "breach, termination, enforcement, interpretation or validity thereof . . . shall be determined by binding arbitration in the County of Santa Clara in California, before one arbitrator." (*Id.* at 22). Although the clause appears to be incomplete, it contains the essential elements of an arbitration clause (intent to arbitrate, arbitrable issues, location for arbitration). The clause is subject to only one reasonable interpretation—the parties agreed to binding arbitration in California to resolve

disputes regarding breach, termination, enforcement, etc. of the SPA. While the clause lacks a heading, it refers to itself as "this agreement to arbitrate." (*Id.*). The parties also initialed each page of the SPA, and no pages appear to be missing. Further, even though the parties likely did not intend to include a "mangled" arbitration clause in the SPA, no party has challenged the intent to include the clause in some form, and no party has challenged the validity of the SPA as a whole. As written, the clause is sufficient to show the parties agreed to binding arbitration in California.

The agreement also undoubtedly encompasses the dispute at issue. The arbitration clause specifically refers to "breach" and "enforcement," and Plaintiff's claims include breach of contract with a request to enforce the terms of the SPA. As a result, the clause is a valid arbitration clause and should be enforced.

The Court grants Defendants' converted motion to compel arbitration. It dismisses the case and orders the parties to undergo binding arbitration in the County of Santa Clara, California as the arbitration clause dictates. Defendants' Motion to Dismiss for Forum Non Conveniens and their Motion for a Stay of Proceedings are denied as moot.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 7) is GRANTED as a Motion to Compel Arbitration, and the Clerk shall close the case.

IT IS FURTHER ORDERED that the parties shall submit to binding arbitration in the County of Santa Clara in California.

IT IS SO ORDERED.

DATED: This 13th day of November, 2015.

_____
ROBERT C. JONES
United States District Judge